Good morning, your honors. May it please the court. The contract that Tracker Boat drafted for its customers to sign, provided the prevailing party in any such action or proceeding, if there is a lawsuit, shall be entitled to recover all litigation costs and expenses, including reasonable attorney's fees. As the court knows, this case has been here once before. It was sent back because the district court determined that a contingent fee was appropriate but had used the incorrect amount for the common fund to do the math, and then awarded ultimately costs as well in the case. And so we've raised two issues for you. The first is, what does all mean? Does it mean, as we believe, every category of expense, and does it also mean complete? In other words, every expense is fully paid. And then the second point, which we'll get to in a bit, is the attorney's fees piece. The court was asked to award $722,000 in expenses. This is a class action involving 94,000 people and $22 million in damages. And the last part of that, the $290,000, was administrative costs that were required to sort of keep track of the money, send it out, be a 10-year piece of litigation, and so it's going to take a, there's going to be people that we can't find, collect all of that. There's a considerable amount of work at the end of the case here. And the court decided to award $700,000 of the $722,000, indicating its view that the matter was speculative. The courts regularly handle that kind of circumstance. The speculation was not speculation, we respectfully suggest. It was based on affidavit of people do this and what they believe the actual costs would be. You're not appealing that amount though, right? The $290,000? Well, we've appealed, we believe, Your Honor, the failure to give the additional $22,000, and we're appealing the fact that it had not come from Tracker, but from the common fund. And did you raise that to the district court? Did you say district court, this $407,000 plus $290,000, this over $700,000 needs to come directly from Bass Tracker? Yes, ma'am. And when the district court, was it addressed in the argument? I'm surprised that there was a clear order that no one sort of, you know, filed something after the judgment, said, wait, wait, judge, I think you've got this wrong, this should actually come from Bass Tracker. Well, Your Honor, I wasn't there, but I can tell you that when the case came back, Judge Finner wrote an order saying that both parties agree, and I'm going to quote it here, it's document 391, that the court's inquiry on remand is limited to two issues, what fees and expenses TMBC owes in addition to the underlying award pursuant to the fee and cost shifting provision. And so both parties agreed on that, that matter came up, it was briefed, he found a district court case that said that you could take the costs and expenses out of the common fund, applied that case, ignored the contract, ignored this court's teaching, I believe clear teaching on this case, and then cut it back $22,000. And what kind of argument was made at the district court about the fund administration fee and whether that was costs and expenses? Was that, I didn't see any ruling from Judge Finner on whether or not that could be included in the litigation costs and expenses. Well, he clearly included some of it. Well, I understand that he included it, but I didn't see an analysis of any sort of, I have to resolve this because the parties disagree. I read the order to say he reached a conclusion, it was not fully explicated I don't believe, and it came out with this number. And so, even if you decide that these administrative costs at the end are not included within this exceedingly broad contract language. Well, it is exceedingly broad, but I've got to say, when you talk about, this is a plain meaning thing, all litigation costs and expenses, to me that's talking about attorneys going to a deposition and cost of briefing, telephone calls, copying fees. It's not, once we win and the case is over, then we get to take the money and basically have the other side pay for the administration of the award. So, I guess my question is, why on earth would that be all litigation costs and expenses? Well, I think that's the right question, Judge, and I think the answer is, it is exceedingly broad. This is a class action. This is included in every kind of class action. If they wanted to bar class actions from coverage by the contract, everybody else is doing it these days in arbitration clauses and in consumer contracts. Well, it is exceedingly broad, but it's not all costs arising out of the litigation, all costs related to the litigation. It seems to use litigation costs and litigation expenses almost as, not quite a term of art, I think that's a little strong. The other side sort of makes that argument, but it's not as broad as it could be to make clear that those fund administration expenses should come from the other side. Well, I guess I would suggest to you, what would the reasonable expectation, that's Missouri law, of this sort of contract be? And it would include the whole shooting match, in my view. But if you reach the other conclusion, Judge Finner is still wrong because the parts that's not part of this has to come out, I believe, under the contract from Trapper's pocket and not the common fund. So the second issue is the fee. And I've got just a minute or two to go over that. But the policy of Missouri, I think, is where we ought to start on this. And I understand full well it's an abusive discretion standard. I served with Judge Benton on the Missouri Supreme Court, and I know how difficult that standard is. But I want to suggest to you that as I looked at the cases, and we heard in a previous case, what's the zone of choice here, you can't find one that's like this, where you have a policy of the state that says, we want to preserve the sanctity of law to such an extent that we're going to treble the damages. And if they want to put a fee-shifting provision in that statute, they could have, but they didn't. What they did was, they said treble the damages to encourage lawyers to disincentivize unauthorized practice. And the cases that have come down recently on this particular statute are all class action cases and all ended up being contingent fee cases. You have to incentivize under the statute the lawyers to go into the arena against, in this particular case, for instance, the finest lawyers in the United States, who would not give a single inch of the battlefield to the plaintiffs in this case. And that's their job. We're not fussing about that. But it was not an easy case. And if you look at the factors of what is the policy of the state of Missouri, and then you move, as the law and economics people say, to what is the ex ante expectation here, when the client signs a contingent fee agreement. And Boeing says, one of the things we want to do here in a class action, where a common fund is involved, is put the people in the class in the same position as the person who signed the contingent fee contract at the beginning. So it seems to me that it becomes, and this is a hard thing to say, and I understand it, but it becomes an abuse of discretion here when the judge ignores the policy and then doesn't apply all of the factors that I know this circuit hasn't adopted a particular test, but it's out there. They're all about the same. There's six of them. And then, in saying, this is a contingent fee case, that's what came up the first time. He just used it in the wrong way. And I've known Judge Finner for a very long time, but it seemed to me that there was a number that was picked, and then whatever formula was ultimately employed was designed to get us back to that particular number. And I would, it's a terrible thing to say abuse of discretion. I understand that. But I believe if there's an example of it, that this is it. Of the six or seven factors, we believe he only applied one, the time and labor. And when he explained why he didn't go to the contingent fee, he used Lodestar multiplier language. There was not sufficient records of what paralegals did or exactly what the lawyers did. And I think the case is oversimplified, but that Lodestar is about work done. Contingent fee is about results achieved. And these lawyers got for these 94,000 people 100% of the theoretical damages that were possible over 10 years, with no payment for 10 years. And at the end of the day, we're given $454 an hour for work that was, even by Judge Finner's terms, exemplary. I have 46 seconds. I'd like to preserve just a little of it, and I thank the court for its time. May it please the court, Ashley Parrish for the defendant's appellees. Your honors, it's important to step back and recognize how generous this fee award was. If you take a look at the pages on app 53, you can see their fee records. There's no narrative, no explanation, just initials and the idea that 23 hours of work this day, 18 hours of work this day. Judge Finner overlooked all of that and gave them full credit for every hour they claimed, all 5,000 of them. The evidence in the record was also that the prevailing rates in Springfield, which is the standard that should apply, was between $170 and $350 per hour for attorneys at this level. Judge Finner gave them $600 per hour and then made an adjustment because all the work was done by equity partners, not by paralegals. He also made no adjustment for the fact that a number of claims that they had brought that led to a lot of this litigation were withdrawn or were removed. At the end of the day, our evidence showed that the appropriate Lodestar figure was about $900,000. Judge Finner gave plaintiffs $2.4 million in fees. That's a very generous fee. It's his analysis of the Lodestar, but it's first the cost, then the fees, and if there's time, I'll say just a quick word about standing. Well, I hope you will also address the fees themselves. Is that what you were going into right now? I was going to say cost, then fees. I apologize. I thought you were following up on the attorney's fees. Go right ahead. Absolutely, Your Honor. Judge Kelly, real quick, your questions are absolutely correct about the waiver argument. What I would point the court to is if you take a look at Appendix 38 and Appendix 48, you will see that the issue is flagged, but under this court's precedence, it's not enough to just have a drive-by sentence that says we want these fees and it should be shifted. There has to be some argument that is presented to the district court. Let me ask as an initial matter, do you disagree that roughly $407,000 should be shifted? Do you agree that those are expenses that should be shifted to Bass Tracker? So, Your Honor, I want to be very clear so I don't mislead the court in any way. It is true that at the earlier stages of the case that we agreed that it would be okay to shift those fees if the district court did that, but the parties never engaged on that issue. Part of the reason the parties never engaged on that issue or the additional fees is because it was never briefed. At this point, our position is that the district court made a ruling that said the fees would be taken out of the common fund and any argument to the circumstances, even though we agreed that if the court had reached a decision to shift it, we were not going to object to that. We're not stuck by that agreement because it was never briefed to the district court. It's their burden to show that there was an error and they could have sought, as Your Honor suggested, some form of reconsideration on that. They did not, and as a result, it comes to this court with no briefing, no factual findings, no consideration by the district court. So, Your Honor, I hope you get my point, which is that I'm not trying to be clever with the court. I do want to acknowledge that before the district court, we said that we were not going to object to the $400,000. We did that way back when, but we also believe that there's a reason why this court enforces waiver and that if it, in fact, had gone back to the district court and they had presented this argument, it would have raised the question of what fees are properly within it. One of the problems we have here is that we're caught in sort of 22, which is on one hand, we agree to the $400,000, we don't agree to the additional $300,000, and now plaintiffs say, well, look, you know, it all just comes in together. Don't worry, shift everything. None of that was presented to the district court, and if you were to send it back down, I think we would be allowed to say that, look, the purpose of the $400,000 agreement was not to sucker us into an additional $300,000, and we can't be forced to, you know, we can now decide what we want to brief, but I don't think you send it back down because it wasn't preserved. Well, let me ask you this. If you had that previous agreement, and there is that one, since I found a sentence, plaintiff's litigation costs have been duly incurred and amounted to $409,000 at the time of judgment. TMBC should have been ordered to pay these class litigation costs, and so if you had this agreement and they raised it in a sentence, why isn't that preservation at least as to the first set, the $400,000? So, Your Honor, I think if they had just left it at that and there hadn't been a debate over the rest of it, and then they'd gone back to Judge Fenner and said, look, there's a mistake here, and we'd like, and here's the reason why, and they'd actually brief the issue, then I think Your Honor would be correct. But this is entirely an error that they brought upon themselves by not briefing it, and we shouldn't be put in a position of bearing the burden of their failure to brief it. They briefed it in nine pages on appeal here. They didn't do anything more than a couple of sentences in the district court. Judge Fenner did what he should have done. He's not properly before the court on appeal. It's waived. So you never had an opportunity to stake out your position regarding the extra $290,000. That was never a live issue for the parties to present an argument to the court on? We presented the argument to the court that we thought that was speculative, and what the court does, you'll see in his decision, is he says, well, we don't need to worry about the speculative nature because it's okay to charge this to the common fund. So my point is that we think that speculative ruling is tied to the fact that he thinks that the class is going to pay it, and so he's more flexible because he doesn't have to, Judge Strauss, do the analysis as to exactly how broad that language is. And so he avoids that by saying, well, there's a common fund, and therefore they can pay up to $700,000, which isn't what you would do if you're looking to actually shift costs. Your Honor, let me just say, Judge Strauss, I won't get into it. You've obviously put your finger on what our argument is relating to the language of the agreement. We think the language is broad but not all-encompassing, and we don't think these are the types of costs that parties would usually expect to be included. Judge Kelly, you asked about the fees, so let me turn specifically to that. It's important to recognize, again, if I would ask the court to look at the record where I mentioned, again, particularly to the pages relating to Act 53, where it starts off their billing records and how inadequate they were. What's telling, though, is that Judge Fenner does his Lodestar analysis. Plaintiffs concede before this Court that the Lodestar is appropriate and reasonable. And that's really the end of their argument in the sense that it is well-established under Supreme Court precedent that all they're entitled to is a reasonable fee, and a Lodestar is presumptively reasonable. Now, what they would need to do in order to accomplish something more than that would be to show some reason why something out of the common fund in addition was appropriate. And they only two arguments, and only made two arguments to Judge Fenner. One is that they say, well, there's this contingency risk. Not only is Supreme Court precedent clear that risk is baked into the Lodestar, but Judge Fenner specifically said in his decision multiple times that he was taking account of the risk in what he was doing with the Lodestar, which is giving them a high rate and not reducing their hours. And then the second thing they argue, which I don't really understand, is they make this argument that because the Missouri statute provides treble damages, you therefore want to incentivize attorneys. It really isn't fleshed out in the brief. It doesn't make any sense. In fact, it really shows just the other way around, which is if you've got a treble damages remedy, at least under the Fifth Circuit's Castano decision, you would usually say it shouldn't be litigated in a class action. It's appropriate for individual litigation. So I don't understand the argument, but it doesn't matter because Judge Fenner made the analysis. It's certainly within his reasonable discretion based on this court's earlier decision. Let me ask one more question about the fund administration fees. It seems like there's a couple of things going on in that fee. One that could be included as sort of a litigation cost, which is putting a check in an envelope and mailing it off to your client, but you have to multiply that out times the class. The other seems to be if there are some costs in finding folk, right, and tracking them down, which isn't a traditional cost associated with an attorney client relationship. Can you speak to that sort of what I see as kind of a mix of costs in that? Yes, so Your Honor, I can and I also can't, but I think your question highlights the problem, which is precisely why we emphasize waiver, because that type of issue, just like fees, is not just a question of are fees granted or not. You have to look at the fees and see whether they're in or out. In the case of cost, you also have to do that analysis. The fact that they never raised it on this appeal before this court other than in passing, and then they never raised it below, means that no court has ever had the factual argument that would allow you disaggregate those different things. So, Your Honor, I admit that there might be arguments that some of these type of administrative costs might be different than the others, but that has never been briefed or argued because it was never teed up by plaintiffs. And so, you know, with respect, I really do think that waiver is the appropriate thing here, because otherwise the court is put in an impossible position of doing one of two things, either sort of making it up on its own or remanding it back to Judge Fenner for doing something that he was never presented an opportunity to do. And this case really has gone on too long. We would like to see it over, and we think that Judge Fenner properly exercised his discretion. So what's your position now on the 407 and the 409? I mean, is your position now is to just stay from the common fund, or do you object to it being shifted as you had your original position? Your Honor, I think the best way to place our argument, just to be clear, is that because of the waiver, it remains in the common fund. They never presented that argument to Judge Fenner. If you were to disagree on the waiver argument, then our position would be that the 409 would be shifted, but they wouldn't be entitled to shift any of the other costs because they haven't explained why those are covered within the statute. But because of the waiver, I don't think you'd get anywhere on that. Your Honors, I'd be happy to say 30 seconds on standing if it would be helpful to the court. Did you have some more questions? I just had one quick question. This case was ultimately settled, right? There were issues that were debated, but essentially we reached agreement once the But there's nothing in the settlement agreement that addresses any of these issues? Not that, no. Those issues were preserved for the judge to make a decision on. So the idea, there was a finding of liability, the parties came together, figured out what the fund should look like, resolved a couple of issues relating to the individual claims and not the class claims, and one sort of stray thing in the class claims, and then said that the fee issues would be I think we can rely on your briefing. Let me just, in that case, thank the court for its time and ask that you affirm. I know I don't have much time, so let me speak as quickly as I can. There's a huge disagreement about what the papers say in this case. I would invite you to look at Appendix 47, which specifically says there's a request for all of this money to be paid by Tracker in the fee and cost area. If they didn't engage, the waiver's theirs. It was raised in our motion. Second thing, I believe that the right way to proceed in this case is as the contract initially suggested on the fees. It's a contingent fee case. This contract is just something that's there, and what it does is it relieves the common fund of its full responsibility. It doesn't supplant what would be the normal law. This would be, and every other Missouri unauthorized practice of law case is, a contingent fee case. What the contract did was just relieve the common fund of a little bit of the fee that Tracker would have to pay. That hasn't been appealed, and we haven't asked. We don't believe they had any right to stand up here except to you all think about this, because they don't pay another nickel. We've not asked for that. What we've asked is for the district court, if it would, or for you in its stead, which we would prefer, to say this is a contingent fee case from the beginning to the end, and what Tracker pays comes off of whatever the proper contingent fee is. I've abused your goodwill here, and for that, I offer my apology, and we ask that the court reverse it. We prefer not to have a remand, but if you need to do that, we understand why. Thank you all. Thank you both for your argument and your briefing, and we'll take the matter under consideration.